

Villanova University School of Law

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2003

# He v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket 02-3057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"He v. Atty Gen USA" (2003). *2003 Decisions.* Paper 619.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/619

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No: 02-3057

———————

SHUI-GUAN HE,
a/k/a Heshui Guan,
                              Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,
                              Respondent

———————

On Petition for Review of an Order of the Board of Immigration Appeals

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
April 11, 2003

Before: ALITO, FUENTES, Circuit Judges, PISANO, District Judge[*]

(Opinion Filed: April 25, 2003)

———————

OPINION OF THE COURT

———————

_____

[*]The Honorable Joel A. Pisano, United States District Judge for the District of New Jersey, sitting by designation.

FUENTES, Circuit Judge:

Petitioner Shui-Guan He ("Shui-Guan"), a national of the People's Republic of China, appeals the Board of Immigration Appeals' ("BIA") summary affirmance of the denial of his application for political asylum. An Immigration Judge ("IJ") found Shui-Guan not credible based on discrepancies in his testimony and concluded that whatever problems Shui-Guan may have experienced in China, they were not on account of his political opinion. Shui-Guan argues that the IJ erred in reaching these conclusions. Because we find that the IJ's decision is supported by substantial evidence, we deny the petition for review.

## I. Background

Because we write solely for the parties, our review of the factual background is limited to that which is necessary to inform our opinion today. Shui-Guan, who arrived in the United States on or about April 29, 2001, is a citizen and national of the People's Republic of China. Upon arrival at John F. Kennedy Airport in New York, Shui-Guan presented a British passport issued in the name of Duc Hien Nguyen. After referral to a secondary inspection point, Shui-Guan admitted to an inspecting officer that the passport was fraudulent and that he was a citizen of China. Because Shui-Guan expressed a fear of returning to China, he was placed in INS custody and scheduled for a hearing before an IJ. On August 1, 2001, Shui-Guan submitted his application for asylum and withholding of removal. On March 25, 2002, Shui-Guan appeared before an IJ.

2

Shui-Guan's testimony before the IJ consisted of the following relevant factual allegations. In June 1997, Shui-Guan rented space from the local government in Fuzhou and opened a fish store in the He Ping Market. In July 1998, the local government raised his rent by two-thirds, in disregard of the existing lease and the fact that Shui-Guan had already paid rent for the upcoming year. Shui-Guan believes he was singled out for an increase in rent due to the success of his business. Based on his refusal to pay the additional rent, Shui-Guan's business permit was revoked and he was assaulted by "managers for the market." AR 97.

In describing the assault, Shui-Guan testified that four men from the market came to his space and told him to put away his fish. When Shui-Guan refused, the men dumped his fish on the ground. After an exchange of words, one of the men hit Shui-Guan in the face. Shui-Guan hit the man back, and then the man tried to hit Shui-Guan with a steel bar but slipped on some water. Shui-Guan then went to get a "knife and hit him in the back." AR 95. One of the men then hit Shui-Guan in "the back with the stick and [Shui-Guan] had to send [sic] to hospital for three weeks." Id. Shui-Guan also testified that he was stabbed with a "fish knife" that was pushed "all the way to [his] lung" and that he was "in the hospital for two weeks." AR 96. In his written application, Shui-Guan declared that during the July 1998 confrontation he "was severely cut with a fish knife on [his] leg and was in the hospital for one week." AR 165. On cross-examination, Shui-Guan gave a confusing account of who actually held the knives and sticks. After

3

attempting to clarify Shui-Guan's testimony, the IJ stated "I give up, sir. I feel you've been given opportunity to address it and you're not going to." AR 111. Shui-Guan remained in Fuzhou for over one year after this incident. AR 100.

Previously, at the airport when he arrived in the United States, Shui-Guan stated that the purpose of his trip to the United States was that "in China all the policemen are looking for me." AR 122. When asked why they were looking for him, he replied that "because in 1997 there was a big hurricane and I could not get enough fish for the restaurant so there was a big fight with the restaurant owner and the police and me." Id.

The IJ denied Shui-Guan's application for political asylum for two reasons. First, the IJ noted that Shui-Guan's testimony differed from the facts contained in his written application and the story he told at the airport. Based on these varying accounts, the IJ determined that Shui-Guan's testimony was not persuasive. Second, the IJ ruled that even if Shui-Guan had presented credible testimony he was not entitled to asylum because his problems in China were not based on his political opinion or any other statutory ground for asylum. Instead, the IJ concluded that Shui-Guan's problems in China were more likely related to a business disagreement over rent. Thus, the IJ denied Shui-Guan's asylum application, his request for withholding of removal, and his claim under the Torture Convention. Shui-Guan appealed the IJ's decision to the BIA. On July 9, 2002, a single member of the BIA summarily affirmed the decision of the IJ.

4

## II. Jurisdiction and Standard of Review

We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1). We review the BIA's decision unless the BIA defers to the decision of the IJ. See Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). When the BIA defers to an IJ, we must review the IJ's decision to assess whether the BIA's decision to defer was appropriate. See id. The IJ's conclusion on an applicant's "well-founded fear of persecution" is a finding of fact that we review for substantial evidence. See Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001) (citations omitted). Under the substantial evidence standard, a finding must be affirmed unless the evidence not only supports a contrary conclusion, but compels it. See id. at 483-84.

## III. Discussion

The Attorney General may grant asylum to an applicant "if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42(A)." 8 U.S.C. § 1158(b)(1). Section 1101(a)(42)(A) defines "refugee" as

> any person who is outside any country of such person's nationality or in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion ... .

8 U.S.C. § 1102(a)(42)(A). The asylum applicant bears the burden of establishing that he or she qualifies as a "refugee." See 8 C.F.R. § 208.13(a) (2001).

5

Shui-Guan first challenges the IJ's adverse credibility determination. We must affirm the BIA's, or, in this case, the IJ's adverse credibility determination if there is substantial evidence in the record to support it. See Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998). The IJ cited numerous inconsistencies among Shui-Guan's answers to questions at his inspection, his declarations in his written application, and his testimony at the hearing on his application, in concluding that Shui-Guan was not credible. At the hearing, Shui-Guan testified that the manager of the fish market stabbed him in the back with a fish knife that pierced his lung. Shui-Guan first claimed that he remained in the hospital for two weeks and then stated he was in the hospital for nine days. In his written application, Shui-Guan stated that someone stabbed him in the leg with the fish knife and he remained in the hospital for one week. In his original airport statement, Shui-Guan claimed that he left China because a big hurricane prevented him from getting enough fish, which resulted in a fight between the restaurant owner, the police, and him.

In addition, the IJ found that Shui-Guan's manner of testifying was not persuasive and that Shui-Guan experienced difficulty in responding to simple questions. Shui-Guan claimed that the dispute with the manager of the market arose out of an increase in his rent; however, when questioned about why his rent was raised he could not offer an adequate explanation. Ultimately, the IJ concluded that Shui-Guan was "an extremely poor witness" and that, absent any other clear explanation, Shui-Guan may have come to the United States simply because his business had failed. AR 30-31. The finder of fact is

6

in a much better position than an appellate court to make a credibility determination based on factors such as a witness' demeanor and a witness' reactions to individual questions. Given Shui-Guan's poor performance as a witness and the numerous inconsistencies in his airport statement, his written application, and his testimony at his asylum hearing, we find that the IJ's adverse credibility determination is supported by substantial evidence.

Even if we were to reject the IJ's adverse credibility determination, Shui-Guan would not qualify for asylum. To qualify for asylum Shui-Guan must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1102(a)(42)(A). Shui-Guan argues that even a business dispute can transform into an instance of persecution on account of political opinion. At best, Shui-Guan's testimony establishes that his rent was raised due to either the success of his business or because the market manager wanted Shui-Guan's space for a relative. In either case, Shui-Guan was not persecuted on account of his political opinion. While Shui-Guan maintains that he was attacked for his refusal to pay what he perceived to be an arbitrary increase in his rent, such refusal does not qualify as an expression of a political opinion. "[P]urely personal retribution is, of course, not persecution on account of political opinion." Molina-Morales v. INS, 237 F.3d 1048, 1052 (9th Cir. 2001) (citation omitted). Shui-Guan offered no evidence that his refusal to pay the increased rent stemmed from his political views, nor any evidence that the market agents viewed his refusal to pay rent as a

political stance.  In sum, the IJ did not err in denying Shui-Guan's application for asylum.[2]

## IV.  Conclusion

Accordingly, for the reasons stated above, we deny the Petition to Review the Order of the Board of Immigration Appeals entered July 9, 2002.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Julio M. Fuentes
Circuit Judge

_____

[2]     While Shui-Guan does not separately challenge the IJ's denial of his requests for withholding of removal and relief under the Torture Convention, we nonetheless find that the IJ properly denied those requests.